IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAFAEL CACHO VEGA and
MIGUEL CACHO VEGA,

            Plaintiffs,

    v.

DOWNEY SAVINGS AND LOAN,
et al.,

            Defendants.

NO. C07-6304 TEH

<u>ORDER RE: HEARING ON
MOTION FOR DEFAULT
JUDGMENT</u>

    Plaintiffs' motion for default judgment against Defendant Absolute Investment Group dba Palacio Mortgage ("Absolute Investment Group") is scheduled to be heard on January 11, 2010. The deadline for opposing the motion has passed, and no opposition was filed. Thus, unless Absolute Investment Group appears at the hearing and presents good cause for its failure to file an opposition and to set aside the entry of default, it appears that entry of default judgment will be appropriate.

    However, upon reviewing Plaintiffs' moving papers, the Court has serious concerns about the amount of damages claimed by Plaintiffs. Plaintiffs shall come prepared to address the following issues at oral argument:

    1.    Why should funds paid on the second mortgage be considered on a motion for default judgment against the first mortgage company when Plaintiffs have settled with the holder of the second mortgage? Even if such funds should be considered, why is Miguel Cacho Vega's "belief" that he paid "at least $5000" on the second mortgage sufficient evidence to support a judgment for that amount?

    2.    Miguel Cacho Vega's declaration states that if he had been aware of the true nature of the loans at issue, he either would have sold the property or obtained a different loan. There is also evidence that Mr. Cacho Vega intended only to remove his co-borrower

from the original mortgage and did not intend to sell the property.  Given this evidence, why should Mr. Cacho Vega recover lost equity in the home as of the 2005 appraisal date?  If the goal is to place the plaintiff in the position he would have been in but for the fraudulent activity, wouldn't a better measure be to consider how much equity, if any, Mr. Cacho Vega would have had if he continued to live in his home through the present date?

3. Does Miguel Cacho Vega have any evidence to support his statement that "[t]he lost furniture had a value of $2,000"?

4. How did both Plaintiffs determine the value of their emotional distress and the amount of punitive damages to request?

5. How did Rafael Cacho Vega determine that the damage to his credit should be valued at $50,000?

6. What figures did Rafael Cacho Vega include when calculating that he incurred $30,389.63 in loan costs?

7. Why should the $22,385.63 that Rafael Cacho Vega asserts should be disgorged by Absolute Investment Group also be included in the amount of compensatory damages awarded to Mr. Cacho Vega?

If Plaintiffs wish to file a written response to any of the above questions, they must do so on or before **January 6, 2010.**  If Plaintiffs need more time to re-evaluate their claims for damages in light of the Court's concerns, the Court will entertain a motion for a brief extension of both the response-filing deadline and the hearing date.

**IT IS SO ORDERED.**

Dated:   12/23/09

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

2